## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |
|---|---|
| **DAIMLER AG**<br><br>     **Plaintiff,**<br><br>  **v.**<br><br>**SHUANGHUAN AUTOMOBILE COMPANY LTD.,**<br>**DES MOINES MOTORS, INC. D/B/A**<br>**SHUANGHUAN AUTO USA,**<br>**and**<br>**WHEEGO ELECTRIC CARS, INC.**<br><br>     **Defendants.** | **Case No.:** |

## COMPLAINT FOR TRADEMARK AND TRADE DRESS INFRINGEMENT, TRADEMARK COUNTERFEITING, PATENT INFRINGEMENT, UNFAIR COMPETITION AND TRADEMARK DILUTION

1. Plaintiff Daimler AG, complaining of Defendants Shuanghuan Automobile Company and Shuanghuan Auto USA (collectively "Shuanghuan") and Wheego Electric Cars, Inc. ("Wheego"), alleges as follows:

## NATURE OF ACTION

2. This is an action for infringement of Plaintiff's distinctive trade dress of its widely popular "smart fortwo" cars by the Defendants, who manufacture in China and distribute and offer for sale in the United States blatant knock-offs of Plaintiff's smart fortwo line of automobiles. As a direct consequence of the Defendants' wrongful conduct, consumers are likely to be confused and Daimler has been and will be irreparably injured. Accordingly, Daimler brings this action for trademark and trade dress infringement, trademark counterfeiting,

trademark dilution, and patent infringement. Daimler seeks injunctive relief, treble damages or statutory damages, and its attorney's fees and costs.

## JURISDICTION AND VENUE

3.    This Court has federal question jurisdiction over the claims in this action which relate to trademark infringement and dilution and patent infringement pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338 and 1367(a).

4.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and because a substantial part of the events or omissions giving rise to Daimler's claims occurred in this District, in that Defendants are marketing and selling the products that are the subject of this action in this District.

5.    This Court has personal jurisdiction over the Defendants because, among other reasons, on information and belief, Defendants have or had a reasonable expectation that goods sold or transported under the accused trademarks and patents are used or are to be used, are sold, or are to be sold in Michigan, Defendants' tortious conduct has taken place and continues to take place in Michigan, and/or Defendants solicit business in Michigan and Defendants' acts are causing tortious injury in Michigan.

## THE PARTIES

6.    Plaintiff Daimler AG is a German corporation having its principal place of business at Mercedesstrasse 137, Stuttgart, Germany 70327.

7.    Upon information and belief, Defendant Wheego Electric Cars, Inc. ("Wheego") is a Delaware corporation with a principal place of business at 888 3rd Street NW, Atlanta, Georgia, 30318.

8.      Upon information and belief, Defendant Shuanghuan Automobile Company Ltd. ("Shuanghuan Automobile Company") is a Chinese company with a principal place of business at No. 368, Shengli N. St., Qiaodong, Shijiazhuang, Hebei, China.

9.      Upon information and belief, Defendant Des Moines Motors, Inc. ("Shuanghuan Auto USA") is an Iowa corporation doing business as Shuanghuan Auto USA with a principal place of business at 4410 Merle Hay Road, Des Moines, Iowa 50310.

<u>FACTS</u>

<u>The Plaintiffs' smart fortwo Car</u>

10.     As a leader and innovator in car design, Daimler and its affiliates and related companies expend considerable resources in research, development and design of new car designs, including designs for innovative subcompact cars with unique features.

11.     Among its car designs, one of the most widely publicized and highly popular subcompact car designs worldwide is Daimler's smart fortwo line of automobiles.

12.     The smart fortwo first went into production in 1998 in Europe and was first sold in the United States in 2008.

13.     The success of Daimler's smart fortwo line of automobiles has been widespread, with over 1.2 million cars sold worldwide.  In the United States alone, Daimler has sold over 60,000 smart fortwo cars since the line was introduced in 2008.

14.     Much of the smart fortwo line's success can be attributed to its unique, distinctive and innovative product design.

15.     The unique design of the smart fortwo line of automobiles has received much attention in the United States and abroad and the smart fortwo line's distinctive profile is regarded as innovative and artistic.

16.     For example, in 2002 the smart fortwo became part of the permanent collection in New York City's Museum of Modern Art – an honor bestowed on just five other automobiles before the smart fortwo's inclusion.

17.     Additionally, the smart fortwo was the subject of a work created by renowned artist Katharina Sieverding and was the subject of a collaborative art project with over 80 illustrators submitting works of art featuring the smart fortwo to the United Kingdom's popular *Digital Arts* magazine.

18.     As an affordable, fuel-efficient, subcompact car, the smart fortwo has become a highly recognizable and popular car in the United States and has received industry awards and accolades for its unique features and design.

19.     The smart fortwo line has come to symbolize, style, quality and comfort in a unique, environmentally conscious car.  Its success and its perception in the minds of consumers have truly made the smart fortwo a cultural icon.

20.     In addition, Daimler has expended considerable time, money, and effort managing the smart fortwo brand to increase consumer perception of the smart fortwo design as a distinctive indicator of the origin and high quality of Daimler's goods.

21.     Daimler promotes its smart fortwo line at numerous trade shows throughout the United States and worldwide and expends significant resources advertising and promoting the smart fortwo line in the United States and abroad.

### Plaintiff's Trademarks and Trade Dress

22.     As a result of Daimler's efforts and the success of the smart fortwo line worldwide, the distinct and innovative design of Daimler's smart fortwo line has become uniquely associated with Daimler in the mind of consumers and the public.

23.     Daimler has spent millions of dollars globally on television, radio, Internet and print advertising and promotional events that prominently feature the smart fortwo design.

24.     Daimler is the owner of, among others, Supplemental U.S. Trademark Registration Nos. 3272975 and 3263309 for its distinctive smart fortwo® design and trade dress, used in connection with automobiles, automobile bodies and automobile parts.

25.     The trade dress protected by Registration No. 3272975, which registered on July 31, 2007, is shown below:



26.     The trade dress protected by Registration No. 3263309, which registered on July 31, 2007, is shown below:



27.     The trade dress shown in the above-referenced registrations and the trade dress associated with the entire line of smart fortwo automobiles have acquired distinctiveness by virtue of Daimler's established use and extensive promotion and sales of its smart fortwo line of automobiles.

28.     Indeed, consumers throughout the United States instantly recognize the smart fortwo trade dress as an identifier of Daimler's goods and services and as an indicator of the high quality and innovative design associated worldwide with the smart fortwo line of automobiles.

## Plaintiff's Patented Designs

29.     Due to the smart fortwo line's unique and novel appearance, Daimler has applied for and obtained several United States patents for the design of the smart fortwo line of automobiles.

30.     Among these patents are U.S. Patent Number D389,783 (the "'783 Patent"), U.S. Patent Number D477,250 (the "'250 Patent") and U.S. Patent Number D549,134 (the "'134 Patent").

31.     The '783 Patent was duly and legally issued on January 27, 1998 and Daimler is the lawful owner of all right, title, and interest in and to the '783 Patent.

32.     A true and correct copy of the '783 Patent is attached as Exhibit A.  Selected Figures of the '783 Patent are depicted below:



FIG.1



FIG.3



FIG.4

7



FIG. 6



FIG. 7

33.     The '783 Patent is valid and enforceable, and cars in Daimler's smart fortwo line embody the design set forth in said patent.

34.     The '250 Patent was duly and legally issued on July 15, 2003 and Daimler is the lawful owner of all right, title, and interest in and to the '250 Patent.

35.     A true and correct copy of the '250 Patent is attached as Exhibit B.  Selected Figures of the '250 Patent are depicted below:



FIG. 1



FIG. 2



FIG. 5



FIG. 6

36.     The '250 Patent is valid and enforceable, and cars in Daimler's smart fortwo line embody the design set forth in said patent.

37.     The '134 Patent was duly and legally issued on August 21, 2007 and Daimler is the lawful owner of all right, title, and interest in and to the '134 Patent.

38.     A true and correct copy of the '134 Patent is attached as Exhibit C.  Selected

Figures of the '134 Patent are depicted below:



FIG. 2



FIG. 3

11



FIG.4

39.     The '134 Patent is valid and enforceable, and cars in Daimler's smart fortwo line embody the design set forth in said patent.

**The Defendants' Infringing Cars**

40.     In a transparent effort to capitalize on the success of and the increasing market for the smart fortwo line of subcompact cars, Defendants have created infringing automobile bodies and automobiles that deliberately copy the distinctive and unique elements of the smart fortwo line.

41.     Defendants' subcompact cars, all of which, upon information and belief, use the same automobile body, are collectively referred to as the "Infringing Cars."

42.     The Infringing Cars blatantly copy the distinctive and protectable exterior elements of the smart fortwo line that are uniquely associated with Daimler.

43.     Defendant Shuanghuan Automobile Company is a Chinese car manufacturer. Shuanghuan Automobile Company manufactures, distributes, and offers for sale a subcompact car called the Noble.

44.     Upon information and belief, Defendant Shuanghuan Auto USA assembles, markets and intends to distribute Shuanghuan Automobile Company's infringing Noble car in the United States.

45.     Shuanghuan Auto USA purports to be currently seeking regulatory approval to sell gasoline and electric versions of Shuanghuan Automobile Company's Noble car in the United States.

46.     Defendant Shuanghuan Auto USA owns and operates an interactive website at www.shuanghuanusa.com, through which potential consumers can obtain information regarding the infringing Noble car, including information relating to purchasing and financing the Noble car.

47.     Defendant Shuanghuan Auto USA purports to be a nationwide distributor, touting on its website that "Shuanghuan Auto USA is here to serve all of North American *[sic]* with electric cars and SUVs so we hope you'll visit interactive Web site frequently and read all about the Noble LC, Noble G4 and *[sic]* SCEO models."

48.     Rather than expend the resources to design its own subcompact car, the Shuanghuan Defendants instead copied the unique patented and protected design of Daimler's smart fortwo line for their Noble car.

49.     As a result, the external appearance of the Noble is nearly identical to that of Daimler's smart fortwo design.

50.     Like Daimler's smart fortwo, the Noble features a unique combination of rounded contours, a sloped front end, upright rear hatch and other elements unique to the Daimler smart fortwo design, making it an imitation of the smart fortwo.  A side-by-side comparison showing Daimler's smart fortwo and the Shuanghuan Noble is shown below:



51.     Upon information and belief, Defendants Shuanghuan Automobile Company and Defendant Wheego formed a partnership in 2008 to produce and market electric cars in the United States using the body of Shuanghuan's Noble car with an electric engine and internal components manufactured by or for Wheego.

52.     Defendant Wheego  has established dealerships throughout the United States, including in the state of Michigan, to facilitate sale of its infringing automobiles.

53.     Defendant Wheego's first infringing car was marketed under the name "Whip." The Whip is an electric low speed subcompact car built using the infringing Noble automobile body.

54.     Defendant Wheego also offers an electric full-speed model of its infringing subcompact car under the name "LiFe."

55.     The first LiFe was delivered to a United States customer on April 22, 2011. Upon information and belief, Defendant has delivered at least one car since that date.

56.     Both the Whip and the LiFe, like the Noble, feature rounded contours, a sloped front end, upright rear hatch and other elements unique to the Daimler smart fortwo design.

57.     As a result, the external appearance of the Whip and LiFe is nearly identical to that of Daimler's smart fortwo design.

58.      A side-by-side comparison showing Daimler's smart fortwo and Defendant Wheego's Infringing Car is shown below:

| Daimler's smart fortwo | Defendant Wheego's Infringing Car |
|---|---|
|  |  |
|  |  |

59.    As demonstrated by the side-by-side comparisons above, the Infringing Cars are virtually identical and confusingly similar to Daimler's famous and distinctive smart fortwo line of automobiles.

60.    Since Defendants' Infringing Cars were introduced to the United States marketplace, they have been widely associated with Daimler's smart fortwo car and/or with Daimler.

61.    Specifically, Plaintiffs and Plaintiff's smart fortwo car is referenced by authors of articles and posts to many automotive websites and online blogs.  These references include:

"The diminutive Wheego Whip is a collaboration between RTEV (Ruff & Tuff Electric Vehicles) and China's Shuanghuan Automobile looks suspiciously like a Smart car, but isn't priced like one."

[Source: http://www.trendhunter.com/trends/wheego-whip-rtev-china last accessed on June 7, 2011]

"It's a chinese copy of the Smart."

[Source: http://dvice.com/archives/2009/02/wheego_whip_ele.php last accessed on June 7, 2011]

"I wonder if Smart has anything to do with this and if they don't why does this car look like a flattened one?"

[Source: http://dvice.com/archives/2009/02/wheego_whip_ele.php last accessed on June 7, 2011]

"This car also looks familiar to anyone who has ever seen the SMART (Mercedes) in action, too."

[Source: http://dvice.com/archives/2009/02/wheego_whip_ele.php last accessed on June 7, 2011]

"WOW somebody is still selling that Chinese knock off a first generation Smart car?"

[Source: http://green.autoblog.com/2011/04/22/wheego-delivers-first-life-vehicle-earth-day/ last accessed on June 7, 2011]

 "Is this based on a Smart ForTwo or is it a real knockoff??"

[Source: http://green.autoblog.com/2009/02/17/wheego-whip-electric-car-coming-to-u-s-in-may/ last accessed June 7, 2011]

"It is a poorly made fake of the smart car."

[Source: http://green.autoblog.com/2009/02/17/wheego-whip-electric-car-coming-to-u-s-in-may/ last accessed June 7, 2011]

"…this Wheego Whip is most definitely an original Smart FourTwo with some modifications…Maybe the Chinese manufacturer that is mentioned in the video can build the old original Smart FourTwo under licence???...I know these cars inside-out down to the finest detail and guarantee that the Wheego Whip is a modified Smart FourTwo."

[Source: http://green.autoblog.com/2009/02/17/wheego-whip-electric-car-coming-to-u-s-in-may/ last accessed June 7, 2011]

"This knock-off makes me want to sell my old-gen Smart ForTwo to avoid being mistaken for someone who would drive around in a Chinese CopyCar."

[Source: http://green.autoblog.com/2009/02/17/wheego-whip-electric-car-coming-to-u-s-in-may/ last accessed June 7, 2011]

"I would argue that there is more of this car that is the same as my Smart than is unique to it, and people would say "Dude, that's a Smart Fortwo!", because it basically is. Albeit a dodgy knockoff of one."

[Source: http://green.autoblog.com/2009/02/17/wheego-whip-electric-car-coming-to-u-s-in-may/ last accessed June 7, 2011]

"I bet owners of the [Wheego] car will get questions like: -Is that a Smart Car?"

[Source: http://www.smartcarofamerica.com/forums/f7/wheego-smart-lookalike-whip-ev-19-000-a-16980/ last accessed June 7, 2011]

"Just looking at the photo makes you think the Whip is a smart fortwo knockoff."

[Source: http://www.thecarconnection.com/news/1021214_review-2009-wheego-whip-nev---challenge-to-smart-fortwo last accessed June 7, 2011]

"Wheego's LiFe, a 100 mile range, electrified Chinese city car that is barely distinguishable from the Smart ForTwo. Can you picture many Americans picking the Chinese Smart clone over the Nissan?"

[Source: http://www.thetruthaboutcars.com/2010/11/wheego-claims-december-launch-for-ev-smart-clone/ last accessed June 7, 2011]

"Chinese drivers would recognize the Wheego LiFe—the body is based on Shuanghuan's Noble mini car. The Noble bears a striking resemblance to the Smart ForTwo."

[Source: http://www.allcarselectric.com/news/1053544_here-wheego-again-another-china-made-car-to-arrive-late last accessed June 7, 2011]

62.      Furthermore, Defendants have marketed the Infringing Cars using slogans that reference the term SMART, no doubt in an attempt to call to mind Daimler and Daimler's smart fortwo line of automobiles.

63.      For example, Defendant Shuanghuan Automobile Company has used the slogan "Smarter than the Rest" in connection with its Noble, and a distributor of Defendant Wheego's Whip car uses the slogan "Don't Just go Green, Go Green SMART!"

64.      In light of the above, consumers are likely to be further confused that Defendants' Infringing Cars are associated with Daimler's smart fortwo line of automobiles, or that the Infringing Cars are authorized by Daimler.

65.      If consumers associate the Infringing Cars with Daimler, Daimler is likely to be harmed because the quality of the Infringing Cars is not of the high standards that Daimler requires for its smart fortwo line of automobiles.

66.      As a direct consequence of Defendants' unauthorized use of the smart fortwo design and Defendants' confusingly similar imitations, Daimler has been irreparably injured and the purchasing public has likely been deceived into believing that the Infringing Cars marketed, offered and sold by Defendants are authorized, endorsed, or approved by Daimler.

67.      Furthermore, Defendant's unauthorized use of Daimler's smart fortwo design and trade dress is likely to dilute the distinctiveness of Daimler's famous marks by eroding the public's exclusive identification of the marks with Daimler and by tarnishing and degrading the positive association and prestigious connotations of Daimler's marks.

68.      Defendants are willfully ignoring Daimler's exclusive rights in its marks and its patented design and are seeking to trade on Daimler's goodwill and communicative power

associated with the smart fortwo brand and design.  If not stopped, Defendants' conduct will cause significant consumer confusion, blur the public's exclusive association of the smart fortwo design with Daimler, tarnish and erode the value of Daimler's marks, and harm Daimler's goodwill.

69.     In addition, as a direct consequence of Defendants' unauthorized use and sale of goods that incorporate Daimler's patented automobile design, Daimler has been irreparably injured and Defendants have wrongfully profited through their use of a design that belongs exclusively to Daimler.

## COUNT I
### (Federal Trademark Infringement under Section 32 of the Lanham Act)
### [15 U.S.C. §1114]

70.     Plaintiff repeats and incorporates all prior allegations as if set forth fully herein.

71.     Daimler is the owner of U.S. Trademark Registration Numbers 3,263,309 and 3,272,975 for its smart fortwo® design trademarks.

72.     As a result of Daimler's established use and extensive promotion and sales, the trade dress of the smart fortwo® design trademarks shown in U.S. Reg. Nos. 3,263,309 and 3,272,975 has acquired distinctiveness and has become well and favorably known to distributors and end-users as identifying Daimler as the sole and exclusive source thereof.  Consumers have also come to recognize that goods offered under the smart fortwo® designs shown in U.S. Reg. Nos. 3,263,309 and 3,272,975  are of high quality and, as a result, the distinctive trade dress has come to represent valuable goodwill which Daimler owns.

73.     Defendants' unauthorized use of confusingly similar imitations of the smart fortwo® design trademarks in the Infringing Cars has caused and is likely to cause confusion and mistake and to deceive potential consumers and the public as to the source, origin or sponsorship

of Defendants and their Infringing Cars.  Defendants' actions constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(1).

74.    Defendants' unauthorized use of Daimler's smart fortwo® design trademarks has caused and, unless restrained, will continue to cause great and irreparable injury to Daimler, to the smart fortwo® design brand and to the  business and goodwill represented thereby, in an amount that cannot be presently ascertained, leaving Daimler with no adequate remedy at law. Daimler, therefore, is entitled to injunctive relief under 15 U.S.C. §1114.

75.    Defendants' actions demonstrate a willful intent to trade on the reputation and goodwill associated with Daimler and Daimler's marks, thereby entitling Daimler to recover an amount equal to treble Defendants' profits, treble Daimler's damages, costs and reasonable attorneys' fees pursuant to 15 U.S.C. §1117.

## COUNT II
### (Federal Trademark Counterfeiting under Section 32 of The Lanham Act)
### [15 U.S.C. §1114]

76.    Plaintiff repeats and incorporates all prior allegations as if set forth fully herein.

77.    Defendants have sold and contemplate selling and distributing Infringing Cars that bear a spurious mark that is virtually identical to and substantially indistinguishable from the smart fortwo® design brand marks depicted in U.S. Reg. Nos. 3,263,309 and 3,272,975.

78.    As a result of Defendants' actual and contemplated use and sale of the Infringing Cars bearing the smart fortwo® design brand, Defendants are using counterfeit marks, as that term is defined in Section 45 of the Lanham Act, 15 U.S.C. §1127.

79.    Defendants' activities have caused and are likely to cause confusion and mistake and to deceive potential consumers and the public as to the source, origin or sponsorship of their Infringing Cars.

80.      Defendants' actions constitute trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114(1).

81.      Defendants' activities have caused and, unless restrained, will continue to cause great and irreparable injury to Daimler, the smart fortwo® brand, and to the business and goodwill represented thereby, in an amount that cannot be presently ascertained, leaving Daimler with no adequate remedy at law.  Daimler is therefore entitled to injunctive relief.

82.      Daimler is further entitled to an accounting for profits, damages, costs and reasonable attorneys' fees under 15 U.S.C. §§ 1116 and 1117.  In accordance with 15 U.S.C. § 1117(b), Daimler is entitled to trebling of the profits and damages, and to prejudgment interest. Alternatively, pursuant to 15 U.S.C. § 1117(c), Daimler is entitled to recover statutory damages for Defendants' willful use of counterfeit marks.

### COUNT III
### (Trade Dress Infringement under Section 43(a) of The Lanham Act)
### [15 U.S.C. § 1125(a)]

83.      Plaintiff repeats and incorporates all prior allegations as if set forth fully herein.

84.      This is a claim for trade dress infringement arising under the Lanham Act, Section 43(a), 15 U.S.C. § 1125(a).

85.      For many years, Daimler has been, and is presently, engaged in the distribution, promotion, and sale of its smart fortwo line of automobiles throughout the United States.

86.      Continuously and long prior to Defendants' acts, Daimler has been distributing, promoting, and selling in interstate commerce its smart fortwo line of automobiles using a distinctive trade dress.  Daimler's distinctive smart fortwo trade dress consists of the external appearance of the automobile, including its unique and distinguishing features and design elements, which is depicted in the images shown below:



87.     The overall external appearance, features and design of the trade dress for Daimler's smart fortwo line of automobiles are arbitrary and non-functional.

88.     As a result of Daimler's established use and extensive promotion and sales, the trade dress of the smart fortwo trade dress has acquired distinctiveness and has become well and favorably known to distributors and end-users as identifying Daimler as the sole and exclusive source thereof.  Consumers have also come to recognize that the smart fortwo line of automobiles, in their distinctive trade dress, are of high quality and, as a result, the distinctive trade dress has come to represent valuable goodwill which Daimler owns.

89.     Daimler's smart fortwo line of automobiles are well known by their distinctive trade dress, which is recognized as an indicator of origin with Daimler, and the trade and consumers have come to rely on this distinctive trade dress as an indication that they are receiving the products of Daimler.

90.     The trade dress used on the Infringing Cars manufactured, distributed, sold and/or offered for sale by the Defendants copies the shape, design and unique non-functional features of Daimler's smart fortwo trade dress.

91.      The Infringing Cars have been deliberately designed to misappropriate Daimler's distinctive smart fortwo trade dress with the intention and for the purpose of trading upon Daimler's goodwill.

92.     Defendants' misuse of Daimler's distinctive trade dress on the Infringing Cars has caused and is likely to cause confusion, mistake, or deception as to the source, sponsorship, or approval of the Defendants' products, in that the trade and consumers are likely to believe, or will believe, that the Defendants' Infringing Cars originate with or are associated with Daimler.

93.     A nearly limitless number of other shapes, designs, and features could have been used on the Infringing Cars sold by the Defendant, rather than using a design which copies non-functional features directly from Daimler's well known smart fortwo trade dress.

94.     By reason of the foregoing, Defendants have violated and are continuing to violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Daimler has no adequate remedy at law and is suffering irreparable harm.

## COUNT IV
### (Federal Trademark Dilution under Section 43(c) of the Lanham Act)
### [15 U.S.C. §1125(c)]

95.     Plaintiff repeats and incorporates all prior allegations as if set forth fully herein.

96.     Daimler's smart fortwo trade dress marks are distinctive and famous.

97.     Daimler has extensively used and promoted its smart fortwo trade dress marks worldwide since 1998.  Daimler has expended billions of dollars in marketing in connection with the marks and has sold billions of dollars of products in connection with the marks.

98.     The smart fortwo trade dress marks are widely recognized as source identifiers for Daimler throughout the United States.

99.     These smart fortwo trade dress marks have been used for years and are so globally recognized and associated with Plaintiff that they are entitled to be recognized as famous and distinctive under 15 U.S.C. § 1125(c).

100.    Defendants' use of the smart fortwo trade dress in connection with the Infringing Cars is likely to cause dilution of Daimler's famous trade dress marks.  Defendants have acted intentionally in order to create an association with Daimler's famous marks.

101.    Defendants' actions entitle Daimler to obtain injunctive relief pursuant to 15 U.S.C. § 1125, and to further obtain monetary relief and its attorneys' fees.

## COUNT V
### (Federal Patent Infringement)
### [15 U.S.C. § 1125(a)]

102.    Plaintiff repeats and incorporates all prior allegations as if set forth fully herein.

103.    Defendants have infringed and continue to infringe the '783 Patent, the '250 Patent and/or the '134 Patent by their manufacture, sale, offer for sale, and/or use of an automobile design which an ordinary observer would believe is substantially the same as the patented designs in the '783 Patent, the '250 Patent and/or the '134 Patent.

104.    Upon information and belief, Defendants have knowingly and willfully infringed the '783 Patent, the '250 Patent and/or the '134 Patent.  Upon information and belief, Defendants have intentionally copied the designs claimed in the '783 Patent, the '250 Patent and/or the '134 Patent.

105.    Defendants' infringement of the '783 Patent, the '250 Patent and/or the '134 Patent has caused and will continue to cause Daimler damage and irreparable harm unless enjoined by this Court.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays:

1.      That the Court enter judgment that Defendants' actions have violated and, unless enjoined, will continue to violate the rights of Daimler under Sections 32 and 43 of the Lanham Act.

2.      That the Court enter judgment that Defendants have infringed and, unless enjoined, will continue to infringe Daimler's '783 Patent.

3.      That the Court enter judgment that Defendants have infringed and, unless enjoined, will continue to infringe Daimler's '250 Patent.

4.      That the Court enter judgment that Defendants have infringed and, unless enjoined, will continue to infringe Daimler's '134 Patent

5.      That the Court preliminarily and permanently enjoin and restrain Defendants, their owners, directors, officers, agents, servants, employees, subsidiaries, affiliates, and all persons acting in concert or in participating with Defendants:

> a.      From using the smart fortwo® design mark and the smart fortwo trade dress, or any other trademark, service mark, or source designation of any kind that is confusingly similar to or dilutive of Daimler's marks;

> b.      From otherwise competing unfairly with Daimler in any manner;

> c.      From using, selling, or offering for sale the Noble, Whip and/or LiFe vehicles;

> d.      From conspiring with, aiding, assisting or abetting any other person or business entity from engaging in or performing any of the activities referred to in subparagraphs (a)-(c) above.

6.     That the Court order Defendants, their owners, directors, officers, agents, servants, employees and all persons acting in concert or participating with Defendants to deliver up for destruction all infringing articles and materials in their possession or control that reflect the unauthorized use of the Daimler marks or trade dress.

7.     That the Court order Defendants to file with the Court and to serve on counsel for Daimler, within thirty (30) days after the entry and service on Defendants of an injunction, a report in writing and under oath setting for the in detail the manner and form in which Defendants have complied with the foregoing injunction provisions.

8.     That the Court order an accounting and render judgment against Defendants for an amount equal to treble all profits received from their unauthorized use of the Daimler trademarks and trade dress.

9.     That the Court enter judgment in favor of Daimler for all damages sustained on account of Defendants' trademark and trade dress infringement and that such damages be trebled pursuant to Section 35 of the Lanham Act, 15 U.S.C. §1117(a).

10.     That Daimler be awarded its attorneys' fees and costs incurred in this action pursuant to 15 U.S.C. § 1117(a).

11.     That the Court find that Defendants' patent infringement has been willful.

12.     That the Court award Daimler damages pursuant to 35 U.S.C. § 289 due to Defendants' infringement of the '783 Patent, the '250 Patent and/or the '134 Patent and/or award Daimler damages pursuant to 35 U.S.C. § 284 adequate to compensate Daimler for infringement of the '783 Patent, the '250 Patent and/or the '134 Patent, increased threefold for willfulness, together with interest and costs.

13.      That the Court find that this is an exceptional case and award Daimler reasonable

attorneys' fees pursuant to 35 U.S.C. §285.

14.      For such other and further relief as the Court deems just and equitable.

Respectfully submitted,

**DAIMLER AG**
By its attorneys,

**BUTZEL LONG**


By:      /s/Bruce L. Sendek
          Bruce L. Sendek (Michigan Bar # P28095)
          Paul R. Fransway (Michigan Bar # P37900)
          BUTZEL LONG
          Suite 100
          150 West Jefferson Avenue
          Detroit, MI  48226
          Telephone:  (313) 225-7000
          Facsimile:  (313) 225-7080

          Of Counsel:

          Mark Schonfeld
          Sara Beccia
          Burns & Levinson LLP
          125 Summer Street
          Boston, MA  02110
          Telephone:  (617) 345-3000
          Facsimile:  (617) 345-3299


Dated:  August 17, 2011

01618887.v2