UNTIED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAIMLER AG,

        Plaintiff,

v.

SHUANGHUAN AUTOMOBILE
COMPANY, LTD., WHEEGO ELECTRIC
CARS, INC., and DES MOINES
MOTORS, INC.,

        Defendants.
_____/

CASE NO. 2:11-cv-13588

HON. MARIANNE O. BATTANI

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

This matter is before the Court on Defendant Des Moines Motors, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction.  Plaintiff Daimler AG filed the instant action against Defendants alleging trademark and trade dress infringement, trademark counterfeiting, patent infringement, unfair competition, and trademark dilution arising out of Defendants' manufacture and sale of "smart" vehicles.  Defendant Des Moines Motors now seeks a determination that this Court lacks personal jurisdiction based on its scarce contacts with Michigan.  For the reasons stated below, the motion is **GRANTED**.

**I.  STATEMENT OF FACTS**

Plaintiff Daimler AG ("Daimler") is an auto manufacturer headquartered in Stuttgart, Germany.  Daimler developed and produced its "smart fortwo" line of automobiles in 1998 in Europe, and began selling them in the United States in 2008.  (Compl. at ¶ 12, ECF No. 1).  Daimler owns several trademarks for the smart fortwo

vehicle design and trade dress, which it asserts has become synonymous with the Daimler AG brand. (Id. at ¶¶ 22-27). It also owns several patents for the design of the vehicles. (Id. at ¶¶ 29-39).

Defendant Shuanghuan Automobile Company ("SAC") is a Chinese car manufacturer. SAC manufactures similar subcompact vehicles to that of Daimler's smart fortwo: the Noble G4 and the Noble LC. Defendant Wheego Electric Cars, Inc ("Wheego") is a Delaware corporation with its principal place of business in Georgia. (Id. at ¶ 7). Wheego also manufactures and sells automobiles similar to Daimler's smart fortwo: the "Whip" and the "LiFe." (Id. at ¶ 53, 54). Defendant Des Moines Motors, Inc. is an Iowa corporation that purports to sell SAC subcompact vehicles within the United States. Des Moines Motors is a dealership that owns and operates a website under the domain names: www.shuanghuanusa.com and www.shuanghuanofdesmoines.com. (Pl.'s Resp. at 2, ECF No. 35). The website advertises the sale of SAC's Noble line of automobiles. However, customers may not actually purchase vehicles on the site. Des Moines Motors also operates a Wheego franchise. (Def.'s Mot. Dismiss at 4, ECF No. 25).

## II.     STANDARD OF REVIEW

"Where personal jurisdiction is challenged in a 12(b) motion, the plaintiff has the burden of establishing that jurisdiction exists." Am. Greetings Corp. v. Cohn, 839 F.2d 1164, 1168 (6th Cir. 1988). "A trial court, at its discretion, may rule on a [F.R.C.P.] 12(b)(2) motion on the basis of affidavits alone, or may choose to permit discovery in aid of the motion or conduct an evidentiary hearing on the merits of the motion." Michigan Nat. Bank v. Quality Dinette, Inc., 888 F.2d 462, 466 (6th Cir. 1989) (citations

omitted). If the court chooses to decide the motion on the written submissions alone, it must consider the pleadings and affidavits in the light most favorable to the plaintiff. Id. at 466. Thus, a plaintiff need only make a prima facie showing of jurisdiction in order to avoid a motion to dismiss. See Welsh v. Gibbs, 631 F.2d 436, 438 (6th Cir. 1980).

## III. ANALYSIS

It is undisputed that Des Moines Motors has no contacts with the State of Michigan. Daimler argues this Court should exercise jurisdiction over a nonresident defendant solely on the basis of the website. Essentially, Daimler argues Des Moines Motors' intent to sell vehicles in Michigan and the customer confusion created by the website provides a reasonable basis for specific personal jurisdiction because it committed a tort within Michigan. The Court construes this argument as advancing limited personal jurisdiction, as there is no reasonable basis to argue continuous and systematic contacts sufficient for general jurisdiction in this matter. Regardless, Daimler's contentions are without merit.

### A. Personal Jurisdiction Requirements

"A federal court may only exercise personal jurisdiction over a defendant if it is "(1) authorized by the law of the state in which the court sits; and (2) is otherwise consistent with the Due Process Clause of the Fourteenth Amendment." Youn v. Track, Inc., 324 F.3d 409, 417 (6th Cir. 2003) (citations omitted). Michigan's long-arm statute provides for limited personal jurisdiction when the cause of action arises out of the "transaction of any business within the state" or "[t]he doing or causing of any act to be done, or consequences to occur, in the state resulting in an action for tort." See Mich. Comp. Laws § 600.175. Even the "slightest act of business in Michigan" will suffice.

Domino's Pizza PMC v. Caribbean Rhino, 453 F. Supp. 2d 998, 1002 (E.D. Mich. 2006) (citing Lanier v. Am. Bd. of Endodontics, 843 F.2d 901, 906 (6th Cir. 1988)).

Under the Due Process Clause of the Fourteenth Amendment, "[a] state court may exercise personal jurisdiction over a nonresident defendant so long as there exists 'minimum contacts' between the defendant and the forum State." World-Wide Volkswagon Corp. v. Woodson, 444 U.S. 286, 291 (1980) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945)). In the Sixth Circuit, personal jurisdiction exists only when the following three conditions are satisfied:

> First, the Defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Calphalon Corp. v. Rowlette, 228 F.3d 718, 721 (6th Cir. 2000) (citing S. Mach. Co. v. Mohasco Indust., 401 F.2d 374, 381 (6th Cir. 1968)).

The Michigan Supreme Court has broadly construed Michigan's Long-Arm Statute to provide for personal jurisdiction consistent with due process. See Audi AG and Volkswagon of Am., Inc. v. D'Amato, 341 F. Supp. 2d 734, 742 (E.D. Mich. 2004). Therefore, "the state's jurisdiction extends to the limits imposed by federal constitutional due process requirements and thus, the two questions become one. Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog, 954 F.2d 1174, 1176 (6th Cir. 1992) (citing Chandler v. Barclays Bank PLC, 898 F.2d 1148, 1150-51 (6th Cir. 1990)). Consequently, the Court will not independently analyze whether Defendant's conduct satisfies any of the enumerated criteria in M.C.L. § 600.715, but only determine if personal jurisdiction over Des Moines Motors satisfies due process requirements.

4

### B. Purposeful Availment

#### 1. Website Interactivity

Des Moines Motors has no contacts with Michigan other than allegedly through its website. Daimler does not dispute that Des Moines Motors has no office in Michigan, owns no real property in Michigan, has no agent in Michigan, does not market its products to anyone in Michigan through mail or other advertising media, and has not transacted any business with Michigan or with a Michigan resident. Remarkably, the allegedly infringing vehicles are not yet for sale in the United States. Nonetheless, Daimler asserts that Des Moines Motors intends to sell the vehicles in Michigan.

Whether an out of state defendant who operates a website is subject to personal jurisdiction in the forum state depends on the "interactivity of the website." Audi AG, 341 F. Supp. 2d at 742 (citing Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 418-19 (9th Cir. 1997)). There are three levels of interactivity of websites:

> The first category is highly interactive which is the ability to download and enter into contracts. This category is sufficient for a Court to exercise personal jurisdiction. The second category is a middle ground in which defendant maintains an interactive website which permits the exchange of information between users in another state and the defendant, which depending on the level and nature of the exchange, may be a basis for jurisdiction. The last category is where the defendant makes information available on an otherwise passive website. A passive website is insufficient to establish purposeful availment for the purpose of due process.

Id. at 742-43 (internal quotations and citations omitted). Des Moines Motors asserts it operates a "passive" website. Daimler asserts the site is "highly interactive."

According to Daimler, the website contains "photographs, descriptions and videos of Infringing Cars that are the subject of this suit." (Pl.'s Resp. at 4, ECF No. 25). Potential customers may locate information regarding the cars, fill out an online credit

5

application, and click links to social media sites. (Id. at Ex. A-C). The website contains a statement that it is a "nationwide" dealer and that "Shuanghuan Auto USA is here to serve *all* of North America." (Id. at 7) (emphasis added). In addition, the site includes a fuel station map identifying locations across the United States that sell compressed natural gas for these types of vehicles. (Id. at Ex. A-H). A user may focus in on Michigan and find these stations. (Id.) Des Moines Motors does not dispute that its website contains these features.

A website is a "classic passive site" if "it does not allow a visitor to the site to purchase products or otherwise directly transact business over the site." McGill Tech. Ltd. v. Gourmet Tech., Inc., 300 F. Supp. 2d 501, 507 (E.D. Mich. 2004). "A website is passive even when it contains information regarding a company's products and services and displays the company's contact information. Id. (citing Marynard v. Philadelphia Cervical Collar Co., Inc., 18 Fed. App'x 814, 817 (Fed. Cir. 2001)); see also Mink v. AAAA Dev. LLC, 190 F.3d 333, 336-37 (5th Cir. 1999) (holding that website is passive when it provides the user with printable forms and displays contact information). Here, Des Moines Motor's website provides no opportunity to purchase the vehicles. It merely provides product information and the opportunity for customers to consent to a credit check. Given the characteristics of Des Moines Motors' website, it is clear it falls within the passive category. See See, Inc. v. Imago Eyewear Pty Ltd., No. 03-74761, 2004 WL 5569067 *5 (E.D. Mich. Oct. 14, 2004) (website is passive where users may fill out an online form to inquire about products but does not accept credit card information, does not enable purchasing, and defendant never transacted business or received an inquiry from a Michigan resident).

Daimler principally relies on Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883 (6th Cir. 2002) in support of its argument that Des Moines Motors' website is highly interactive.  In Neogen, the defendant was in the business of diagnostic blood-testing and operated a website that provided "information about [defendant's] services, list[ed] the e-mail addresses of personnel, and allow[ed] prospective customers to print blood-collection forms to be mailed along with blood samples." Id. at 886.  The defendant admitted to testing "14 blood samples from Michigan coroners in 1999, and anticipated about the same number for 2000." Id.  However, over ninety percent of its business was the result of governmental agency and hospital contracts from other states. Id.

The court found that plaintiff satisfied the Michigan long-arm statute because defendant transacted business within Michigan "when it accepted blood for testing from Michigan, mailed the test results to Michigan, made the results accessible to its Michigan customers on its website, and accepted payment through the mail from Michigan." Id. at 887.  Regarding due process minimum contacts, the court found the defendant purposefully availed itself to Michigan because the site provided passwords to customers when they purchased testing to check results, which is tantamount to a contract. Id. 890-91.  It also found that the defendant held itself out as welcoming Michigan business because it would do testing for "any parent in any state." Id. at 891.  The site also contained a geographical breakdown of data including Michigan. Id.

However, Neogen is distinguishable from the instant case.  Unlike the defendant in Neogen, Des Moines Motors never sold any product or engaged in any business with a Michigan resident or company.  It has no contacts with Michigan.  Daimler seeks to establish personal jurisdiction solely through the website.  Importantly, the court in

Neogen never expressly ruled on the interactivity of the website. Id. ("Whether [defendant's] website alone would be sufficient to sustain personal jurisdiction in Michigan, however, is a close question that need not be decided in this appeal. This is because [defendant's] website *is not its only contact with the state.*") (emphasis added). The court noted that the most important factor was that "when potential customers from Michigan have contacted [defendant] to purchase its services, [defendant] has welcomed their individual business on a regular basis." Id. Neogen does little to support Daimler's argument when, instead, the court relied on the website coupled with actual business transactions between the defendant and the forum state.

Daimler also relies on First Tennessee National Corp. v. Horizon National Bank, 225 F. Supp. 2d 813 (W.D. Tenn. 2002). In Horizon, the defendant operated a website that allowed consumers to "complete an on-line mortgage application; to join an e-mail list to receive daily commentary on mortgage-related topics; to send in on-line testimonials; and to sign up for the 'rate tracker' service whereby customers may . . . receive notification via e-mail when a target rate becomes available." Id. at 820. The site also provided a mortgage rate calculator, the opportunity to obtain expert advice via email, a tool to determine eligibility for loans, and held itself out as approved to lend in "ALL 50 States." Id. at 820-21. Although the plaintiff never asserted the defendant conducted business with an in-state resident, defendant never denied such. Id. Thus, the court's ruling necessarily rested upon an assumption that defendant transacted business with in-state residents.

Horizon is also distinguishable from the present case. Here, Des Moines Motors asserts it has never transacted business with a Michigan resident or company, nor has

8

Daimler alleged any such transaction. In addition, the websites in Horizon and Neogen are far more functional than the website in this case. Des Moines Motors' site does not permit customers to purchase products, receive any kind of payment, provide passwords or permit creation of accounts, talk with experts to obtain advice, or receive email alerts for products. Although it does permit customers to fill out a credit application, the customer must then visit or phone the dealer to complete the transaction. These functions fall short of the requisite level of interactivity sufficient for personal jurisdiction. See Sunshine Distrib., Inc. v. Sports Auth. Mich., Inc., 157 F. Supp. 2d 779, 786 (E.D. Mich. 2001) (website insufficient where customers could only email defendant and submit warranty claims). The court in Sunshine Distribution also noted that the site failed to satisfy the Michigan long-arm statue because it did not constitute the "transaction of any business" within Michigan. Id. (implying that the site in Neogen would also fail to satisfy the Michigan long-arm statute, thereby declining to engage in any due process analysis whatsoever).

Last, Daimler argues that Des Moines Motors, by posting pictures and information relating to the infringing vehicles on the website, created customer confusion in violation of the Lanham Act. In other words, Des Moines Motors committed a tort within Michigan for purposes of the Michigan long-arm statute. See M.C.L. § 600.715(2) ("The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort."). However, as previously discussed, Des Moines Motor's website is insufficient to establish purposeful availment in accordance with due process. See McGill Tech, 300 F. Supp. 2d at 507 n.2 ("[I]n an apparent attempt to argue that [defendant] committed a tort for purposes of § 600.715(2), Plaintiff notes that,

9

at one point in time, [defendant's] website provided product information about the allegedly-infringing dispenser. This apparent argument lacks merit because, even if § 600.715(2) was satisfied, due process is not satisfied [because the passive website is insufficient for purposeful availment]."); see also Masco Corp. of Indiana v. Delta Imports, LLC, No. 11-14720, 2012 WL 1555417 *2 (E.D. Mich. April 30, 2012) ("Of course, even if the Michigan long-arm statute authorizes the exercise of personal jurisdiction over a defendant [who creates confusion by posting infringing products on a website], a Michigan court may not do so in violation of the right to due process."). Regardless of whether Des Moines Motors' conduct qualifies as a tort committed in Michigan, the website standing alone, cannot satisfy due process.

### 2. Effects Test

Although Daimler did not argue jurisdiction under the "effects test," articulated by the Supreme Court in Calder v. Jones, 465 U.S. 783 (1984), the Court will address the issue. Personal jurisdiction arises under the effects test if a defendant "(i) commits intentionally tortious actions; (ii) which are expressly aimed at the forum state; (iii) which cause harm to the plaintiff in the forum state which the defendant knows is likely to be suffered." Weather Underground v. Navigation Catalyst Systems, Inc., 688 F. Supp. 2d 693, 700 (E.D. Mich. 2009) (citing Euromarket Designs, Inc. v. Crate & Barrel Ltld., 96 F. Supp. 2d 824, 835 (N.D. Ill. 2000)).

Here, Daimler argues Des Moines Motors committed tortious conduct by posting information and pictures of the infringing products on the website. This is sufficient to meet the first prong. However, there is no conduct expressly aimed at Michigan. See Am. Pie Pizz, Inc. v. Holton Holdings, Inc., No. 10-13106, 2011 WL 334272 (E.D. Mich.

Jan. 31, 2011) (holding that defendant who operated infringing website and did not transact business with Michigan residents or within the state did not target Michigan plaintiff company who owned trademark). Likewise, Daimler cannot establish that the brunt of its injuries were felt in the forum state because Daimler is not a Michigan corporation. See Audi AG, 341 F. Supp. 2d at 746. Moreover, Des Moines Motors did not transact any business or solicit business with Michigan residents. Thus, Daimler has not established that Des Moines Motors is subject to personal jurisdiction under the effects test.

### C. Cause of Action Arising from Forum Activities

In order to demonstrate the second element of personal jurisdiction, Daimler must show that its cause of action arose from Des Moines Motors' conduct in Michigan. "Only when the operative facts of the controversy are not related to the defendant's contact with the forum state can it be said that the cause of action does not arise from that [contact]." Southern Mach. Co. v. Mahasco Indus., Inc., 401 F.2d 374, 384 n.29 (6th Cir. 1968). Des Moines Motors has no contacts with Michigan and did not target Michigan residents. Its only alleged contact is through its website. Daimler's cause of action for confusion under the Lanham Act is not related to Des Moines Motors activities in Michigan, as none exist. Therefore, the second element is not satisfied.

### D. Reasonableness

If the first two elements of personal jurisdiction are satisfied, then an inference of reasonableness arises. Compuserve, Inc. v. Patterson, 89 F.3d 1257, 1268 (6th Cir. 1996). In the absence of such an inference, the Court must consider:

> the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. It must also weigh in its determination

'the interstate judicial system's interest in obtaining the most efficient resolution of the controversies; and the shared interest of the several States in furthering fundamental substantive social policies.'

Asahi Metal Indus. Co. v. Superior Court of California, 480 U.S. 102, 113 (1987) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980)).

Here, there is a large burden on Des Moines Motors, an Iowa corporation, being haled into court in Michigan where it has no contacts. The injury to Daimler does not arise out of conduct by Des Moines Motors in Michigan. Daimler is not located in Michigan. Any interest Michigan has in protecting its citizens from viewing infringing products on a website is outweighed by Des Moines Motors traveling a great distance to defend its action in a forum where it has never conducted any business or advertised its products. Thus, it is unreasonable for this Court to exercise personal jurisdiction given the extreme scarcity of Des Moines Motors' contacts with the forum state.

### IV. CONCLUSION

Because Des Moines Motors' passive website is insufficient to satisfy due process requirement, Daimler has failed to demonstrate a prima facie case of personal jurisdiction. Accordingly, Defendant's motion is **GRANTED**.

**IT IS SO ORDERED.**

                                                    s/Marianne O. Battani
                                                    MARIANNE O. BATTANI
                                                    UNITED STATES DISTRICT JUDGE

DATE: May 22, 2013

## CERTIFICATE OF SERVICE

    I hereby certify that on the above date a copy of this Order was served upon all counsel for record, via the Court's ECF Filing System.

                                            s/Bernadette M. Thebolt
                                            Case Manager